### STEPHEN SCHIP v. PABST BREWING COMPANY.[1]

January 29, 1896.

Nos. 9647—(250).

**Independent Contractor—Negligence—Liability of Employer.**

The owner of an old building, which had become dangerous by reason of decay, engaged an independent contractor to tear it down. The work was dangerous, and the contractor was incompetent personally to superintend the same, all of which the owner knew when he let the contract. By reason of the contractor's incompetency, his servant was injured while employed in the work. *Held*, the owner is not liable to the servant.

Appeal by plaintiff from an order of the district court for Ramsey county, Otis, J., denying a motion for a new trial. Affirmed.

*S. P. Crosby* and *M. R. Tyler*, for appellant.

*Flandrau, Squires & Cutcheon*, for respondent.

1 Reported in 66 N. W. 3.

CANTY, J. Defendant was the owner of an old stone building, which had been built on the steep side of a bluff at the corner of Wabasha and Third streets in St. Paul. The rear of the building, facing the Mississippi river, was five stories high, while the front was only two stories above the grade of said streets. The building was in a decayed and dangerous condition to such an extent that it became necessary to have it torn down. The defendant advertised for bids for taking down the building, and one Gorton being the lowest bidder, a contract was let to him, whereby he agreed to take down and remove the building in 30 days for the sum of $100. Gorton commenced the work, and employed the plaintiff, a common laborer, to assist him. A few days afterwards, plaintiff was injured while so at work by the giving away of the floors, and brings this action to recover damages for the injury.

It is alleged in the complaint that the work of taking down the building was of a dangerous character, requiring special skill and care in order to do it safely and without injury to employés; that Gorton was not a careful, skillful, or competent man, which defendant at and before the time it contracted with him knew, "or could readily have ascertained by the exercise of reasonable and ordinary care and prudence." It is further alleged that plaintiff was injured by reason of the incompetency of Gorton, who overloaded the floors with the material taken out of the walls; that plaintiff had no knowledge of the dangerous and defective character of the building, or of the incompetency and unskillfulness of Gorton.

When the character of the case was stated to the court below on the trial, the judge directed that evidence be first given of the relations between defendant and Gorton in the taking down of the building. Plaintiff then introduced the evidence of two witnesses to the effect that Gorton was a total stranger to defendant's agent, Miesen, when the contract was let by Miesen to Gorton, and that Miesen at that time knew nothing about his competency to do such work. The second witness also stated that Miesen (who was defendant's representative) was not around the work during its progress, but that he drove by several times, and stopped once as he was going by. Thereupon plaintiff's counsel stated: "I will say to the court that just what this witness has stated is what we shall claim about the contract, what we claim that Mr. Miesen had to do with

the work, what directions he gave; all that we shall show upon that point is what we have put in. We may have more testimony, but only on this same line." Then defendant moved for a dismissal, and thereupon plaintiff offered to prove, among other things, the dangerous character of the building, the incompetency of the contractor, Gorton, and knowledge of all of the same by defendant when the contract was let to Gorton. The offer was refused, and the case dismissed. From an order denying a new trial, plaintiff appeals.

For the purposes of the case we will assume that plaintiff could have proved these offers, and was entitled to do so, if it would result in proving a cause of action against defendant. Counsel for appellant have cited no case which has held the owner liable to the servant of the contractor under such circumstances. There are many cases which hold that the owner of premises cannot, by employing a contractor, relieve himself from the continuing duty which he owes to the public and to the adjoining owners not to maintain a nuisance on his premises, or license any one else to do so. But we can find no case which holds that the owner owes any such continuing duty to the servant of the independent contractor, engaged in the very work of abating the nuisance.

Counsel quotes language from Deford v. State, 30 Md. 179, which, in the connection in which it is used, would seem to give color to the proposition that the owner does owe such a continuing duty to the servant of the contractor; but no such question was in the case. The owner was erecting a building, the front wall of which fell into the public street, and killed plaintiff's intestate, a passerby. It was proved that the owner employed one "Robinson to draw plans and superintend the construction of the building; * * * that he paid Robinson a commission of five per cent. on the value of the buildings, and that Robinson had no other interest in the matter except to make good work for the appellant [owner], who paid for all the materials, and also all the bills for all the workmen upon the orders of Robinson; that Robinson employed one Thomas as master bricklayer, and also two carpenters; that Thomas employed the journeymen bricklayers and hod carriers." Several witnesses testified that "the cornice was too heavy for the wall, and its great weight caused it to fall"; that the wall was a nine-inch wall;

that the projection of the cornice was twelve inches, and that more than seven inches was dangerous. Even there the court held Thomas to be a contractor, and held the owner liable only because he contracted for the erection of a nuisance, and retained general control of its erection. We state these facts to show how pure a dictum was the language of the court intimating that the owner owes such a duty to the servant of the contractor.

Wilkinson v. Detroit S. & S. Works, 73 Mich. 405, 41 N. W. 490, cited by appellant, is a case where a defective roof fell on a person lawfully in the street. The owner attempted to defend on the ground that he had employed a competent architect and a competent contractor when the structure was built, but the court held it was no defense. Said the court: "The injury does not arise from the act of the contractor during the performance of a work over which defendant had no control. * * * The exercise of reasonable care in the creation or maintenance of a nuisance can never be an absolute defense to an action for an injury occasioned thereby."

Lawrence v. Shipman, 39 Conn. 586, from which appellant quotes at length, was a case where a contractor was employed to excavate and erect a wall, and in doing so necessarily undermined the foundation of the adjoining building, causing it to fall, whereby the occupants were damaged. It was held that, if the contractor had performed the work with proper care, the building would not have fallen; that he was an independent contractor, and those employing him were not liable. Whatever comfort appellant may derive from the dicta in that case, he can derive none from the decision itself, which is strongly against him.

All of the cases cited by appellant are cases where the injury was to the person on a public highway or to an adjoining owner. Neither has our attention been called to any case where the owner was held liable on the sole ground of failing to exercise with due care a temporary duty of employing a competent contractor (after which his responsibility would cease), but in every case there was a continuing duty not to maintain a nuisance on his premises himself, or license others to do so. It is often laid down as one of the conditions required to relieve the owner from liability that he shall employ a competent contractor. But this language (where it is not mere dictum) is always used in cases where the owner owes

such continuing duty, and the work to be performed by the contractor will necessarily result in a nuisance to the public or the adjoining owner, unless great or extraordinary care is taken to prevent it from doing so. In such a case, the failure to use special care to employ a competent contractor is equivalent to licensing the nuisance which it is highly probable will result. But this rule is applied only to exceptional cases, where the work is necessarily intrinsically hazardous, such as carrying on blasting operations in the vicinity of the persons or property of others not connected with the work. But, even if this rule should be extended so as to cover injuries to the servants of the contractor, this case would not come within the class of cases where the work to be done by the contractor is "intrinsically hazardous."

Again, there are many successful contractors who are thoroughly competent to estimate in advance with a high degree of accuracy the cost of the work, but who are not at all competent to oversee the actual operations of construction, and who usually sublet the work, or employ competent foremen. And unless we completely overturn the law that has always been applied to such cases as the one at bar, we cannot hold that the owner's knowledge of the contractor's incompetency personally to superintend the performance of the work will make the owner engaging him liable to the servants employed by him on the work. Such a rule would go far towards making an independent contractor a mere foreman, for whose acts the employer is liable.

In our opinion, the appellant did not offer to prove a cause of action, and the order appealed from should be affirmed. So ordered.